# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| KELVIN WOODFORD, : | |
| : | |
| Plaintiff, : | |
| : | NO. 5:09-CV-359 (MTT) |
| VS. : | |
| : | |
| MICHAEL J. ASTRUE, : | |
| : | SOCIAL SECURITY APPEAL |
| Defendant. : | |
| _____ : | |

## RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Kelvin Woodford's applications for benefits under the Social Security Act, 42 U.S.C. § 423. For the reasons that follow, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

On November 7, 2006, Plaintiff applied for a period of disability and disability insurance benefits alleging that he became disabled on October 9, 2003. Plaintiff's applications for benefits were denied initially and upon reconsideration. Consequently, he requested a hearing before an administrative law judge ("ALJ") which was held on July 23, 2008. On April 22, 2009, after receipt and consideration of the reports of consultative examiners prepared after the hearing, the ALJ found that Plaintiff was not disabled. On August 21, 2009, the Appeals Council denied Plaintiff's subsequent request for review.

On October 9, 2009, Plaintiff filed this action. Doc. 1. Plaintiff is proceeding pro se, and his Complaint states only, "I have been denied several times for disability and I have [grand mal]

seizures." Doc. 1 ¶ 4. Neither Plaintiff nor the Commissioner has filed a brief in the case, but the Commissioner has filed an Answer (Doc. 10) and the administrative record ("AR")(Doc. 11).

## LEGAL STANDARDS

The Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. Walker v. Bowen, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). Consequently, the Court's role in reviewing claims brought under the Social Security Act is quite narrow.

The Court may not decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). The Court must, however, decide if the Commissioner applied the proper standards in reaching a decision. Harrell v. Harris, 610 F.2d 355, 359 (5th Cir. 1980). In so doing, the Court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. Bloodsworth, at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if it is supported by substantial evidence. Id.

The initial burden of establishing disability falls upon the claimant. Kirkland v. Weinberger, 480 F.2d 46 (5th Cir. 1973). A claimant asserting entitlement to benefits must demonstrate that he

---

[1] Credibility determinations are left to the Commissioner and not to the courts. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). See also Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986).

suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition, and with regard to claims for disability insurance benefits, a claimant must meet the insured status requirements set forth in sections 216(i) and 223 of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

Review of the ALJ's written decision and the medical record shows that the ALJ applied the appropriate legal standards and that his findings were based on substantial evidence. The ALJ proceeded through the five step evaluation process prescribed by the regulations.

The five-step procedure is outlined in the regulations at 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether or not the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals one or more of the impairments listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of his or her past work. Finally, and only if necessary, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. Id.

In this case, at step one the ALJ confirmed that Plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date. This finding is unlikely to be a source of dispute.

A more fact-intensive determination is required at step two, when the ALJ must determine and define the nature of the claimant's impairments. In this case, the ALJ found that Plaintiff suffers from the severe impairments of borderline intellectual functioning, conversion reaction vs. seizure disorder, alcohol abuse, degenerative disc disease, and depression. This finding was supported by substantial evidence in the medical records. There is only limited evidence of depression in the records, based primarily on Plaintiff's self-report. A psychological report prepared by Dr. Robert Foster on September 18, 2008, states a diagnosis of depression and a Global Assessment of Functioning score of 40, but fails to provide any objective basis for such a finding and does not describe any behaviors or symptoms consistent with depression. AR 285. The finding of borderline intellectual functioning is supported by Dr. Foster's report showing an IQ of 79. AR 284. The finding of degenerative disc disease is supported by the results of an MRI on May 20, 1999, showing a moderate to large disc protrusion at C3-4, a diffuse disc bulge at C4-5 and C5-6, and mild to moderate stenosis. AR277. The records do not suggest, however, that Plaintiff's degenerative disc disease caused more than moderate limitations in his range of motion or ability to lift, sit, stand, kneel, or climb.

As Plaintiff's Complaint indicates, the most significant impairment, and the object of most detailed consideration by the ALJ, was Plaintiff's seizure condition. The precise nature of this condition is somewhat mysterious, and the diagnosis appears to be based primarily on Plaintiff's own reports of his condition. The records provide no medical explanation for the cause of Plaintiff's

seizures, and there is no evidence of any physical findings to explain his symptoms. The results of EEG tests on October 18, 1999, and April 12, 2000, showed that Plaintiff had a "normal waking EEG for the age." AR 215, 236. A CT scan of the brain on January 21, 2000, revealed "mild atrophy" but "no acute process." AR 235. Dr. Foster questioned whether Plaintiff's seizures might be psychological in nature, a "conversion disorder" rather than "bona fide seizures." AR 278, 281.

As the ALJ notes in some detail, the medical records show that Plaintiff was very inconsistent in his reports of his seizure condition.[2] At the hearing before the ALJ on July 23, 2008, Plaintiff testified first that he experienced grand mal seizures "about every three months or so." AR 27. He later testified that his most recent grand mal seizure occurred in May of 2008, two months before the hearing, although he had experienced three or four brief, minor seizures since that time. AR 31. The records show that at other times he represented to doctors that he had seizures lasting four hours as often as three times a month. See, e.g., AR 272.

The records support the ALJ's concerns that abuse of alcohol could have been a factor in Plaintiff's condition. Plaintiff's statements regarding his alcohol use also appear to be inconsistent. The records show several instances in which he claimed to have quit drinking and others where he acknowledged that he continued to drink. On one occasion, Plaintiff presented at a clinical appointment with "abnormal breath" and testing positive for a significant level of alcohol in his blood. AR 216, 219.

The ALJ also noted that Plaintiff had a history of non-compliance with his prescriptions for seizure medications. There are numerous examples of such non-compliance in the record, many of

---

[2]It should be noted that there is an absence of medical records for the period between July 2001 and September 2006.

which are documented by the ALJ in his written report. As one example of such non-compliance, Plaintiff admitted on September 16, 2006, that he had been off his seizure medication for more than one year. AR 139.

At step three, the ALJ determined that Plaintiff's impairment or combination of impairments did not meet or medically equal any of the listed impairments in Appendix 1 of 20 C.F.R. Part 404, Subpart P. The ALJ separately considered whether Plaintiff's mental impairments met or medically equaled the criteria of "Paragraph B" or "Paragraph C" of listings 12.02, 12.04, 12.09. His findings are completely consistent with the record and uncontroversial.

After finding that Plaintiff's impairments did not meet or medically equal any of the listings, the ALJ made a finding of Plaintiff's residual functional capacity. Although Plaintiff's pro se Complaint fails to allege any error with specificity, the residual functional capacity finding is typically the subject of greatest dispute in a disability finding. After reconciling the objective medical evidence with his credibility determinations concerning the Plaintiff's subjective complaints of pain and other symptoms, the ALJ found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), with the following limitations: The claimant can lift 10 pounds frequently and 20 pounds occasionally. Also, the claimant can occasionally climb, balance, kneel, stoop, crouch, and crawl, and can push and/or pull with his right dominant arm frequently but not constantly. [He] has a seizure once every three months. The claimant should not work on ladders, ropes or scaffolds, and should not work at unprotected heights or around dangerous moving machinery, including driving. The claimant is limited to simple work.

AR 13. Specifically regarding Plaintiff's seizure condition, the ALJ accepted Plaintiff's testimony from the administrative hearing to conclude that Plaintiff was likely to suffer a seizure once every three months.

The ALJ's residual functional capacity finding is supported by substantial evidence in the medical records. The ALJ reasonably observed that many of the medical notes related to Plaintiff's seizures and to his exertional limitations were based on Plaintiff's own subjective reports. The ALJ noted that Plaintiff's credibility was in question due to his inconsistent statements regarding the frequency of seizures, his use of alcohol, and his failure to comply with prescribed treatments. Plaintiff's non-compliance was of particular significance in light of evidence to show that his seizures could be "considered controllable" with proper use of medication. See, AR 141.

The record provides sufficient evidence to support the ALJ's decision to give limited weight to the "Seizure Questionnaire" filled out by Plaintiff's treating physician, Dr. Vaughn, in July 2001. Dr. Vaughn wrote that Plaintiff experienced approximately three seizures per month and that the typical seizure lasted four hours. AR 272. She also reported that Plaintiff was compliant in taking his medications. AR 274. Generally, the opinions of a treating physician are "entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). A treating physician's report "may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory." Id. Dr. Vaughn's findings are both conclusory and unaccompanied by objective medical evidence. As noted, there are no objective medical findings in the record to show a medical basis for his seizures. Dr. Vaughn's findings appear to be supported primarily by Plaintiff's personal representations, and the ALJ was justified in finding reasons to question the credibility of those representations.

Based on the limitations outlined in the residual functional capacity finding, at step four the ALJ concluded that Plaintiff could not perform the requirements of his past relevant work. At step five of the evaluation, the ALJ proceeded to consider whether any other suitable work was available

for Plaintiff. Relying upon the testimony of a vocational expert as well as Plaintiff's residual functional capacity, age, education, and past work experience, the ALJ found several jobs which exist in significant numbers in the national economy that Plaintiff can perform. The testimony of a vocational expert, based on a proper hypothetical question, generally constitutes "substantial evidence" that a claimant can engage in other substantial gainful activity. See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The hypothetical posed by the ALJ in this case was consistent with his residual functional capacity finding and with the evidence in the medical records. Based on the vocational expert's testimony, the ALJ concluded that the Plaintiff was not disabled.

Upon careful consideration of the record in this case, it appears that the ALJ properly applied the pertinent legal standards and that his decision, which was affirmed by the Commissioner, is supported by substantial evidence. Accordingly, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy thereof.

**SO RECOMMENDED** this 2nd day of March, 2011.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge